## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

GOLD STAR ENERGY LLC,
4076 E. Patterson Road
Beavercreek, Ohio 45430

        Plaintiff,

    - v. -

MICHAEL DUNLAP
1439 Cliff Court
Columbus, Ohio 43204

and

D'ANDRE DAVIS
1201 Hilltop Drive, Apartment 102
Troy, Ohio 45373

and

TIMOTHY MITCHELL
7905 Melrue Court
Dublin, Ohio 43016

and

LIFEENERGY, LLC
c/o Corporation Service Company
50 West Broad Street, Suite 1330
Columbus, Ohio 43215

and

JOHN DOE CORPORATIONS 1 & 2
(Names and addresses currently unknown)

        Defendants.

Civil Case No.: _____

JUDGE _____

**VERIFIED COMPLAINT FOR TEMPORARY RESTRAINING ORDER (EX PARTE), PRELIMINARY INJUNCTION, AND PERMANENT INJUNCTIVE RELIEF AND OTHER RELIEF**

**(Jury demand endorsed herein)**

NOW COMES Plaintiff Gold Star Energy LLC ("Plaintiff" or "Gold Star"), by and through counsel, and for its Complaint against Defendants Michael Dunlap ("Dunlap"), D'Andre Davis ("Davis"), Timothy Mitchell ("Mitchell"), LifeEnergy, LLC ("LifeEnergy"), John Doe Corporation 1 ("JDC 1"), and  John Doe Corporation 2 ("JDC 2") (collectively, "Defendants"), hereby states as follows:

## **PARTIES**

1.       Gold Star, at all times pertinent hereto, was and is a duly organized and validly existing Limited Liability Company under the laws of the State of Ohio, with its principal office located at 4076 E. Patterson Road, Beavercreek, Ohio 45430.

2.       Defendant Dunlap is an individual in the State of Ohio, who, upon information and belief, resides at 1439 Cliff Court, Columbus, Ohio 43204.

3.       Defendant Davis is an individual in the State of Ohio, who, upon information and belief, resides at 1201 Hilltop Drive, Apartment 102, Troy, Ohio 45373.

4.       Defendant Mitchell is an individual in the State of Ohio, who, upon information and belief, resides at 7905 Melrue Court, Dublin, Ohio 43016.

5.       Defendant LifeEnergy, at all times pertinent hereto, was and is a duly organized and validly existing corporation under the laws of the State of Delaware, which is registered in the State of Ohio and conducts business in the State of Ohio.

6.       Defendant JDC 1 is an entity formed by Defendant Dunlap, whose name and address is currently unknown to Plaintiff.  Plaintiff will amend this Complaint to reflect such information when it becomes known to Plaintiff.

7. Defendant JDC 2 is an entity formed by Defendant Mitchell, whose name and address is currently unknown to Plaintiff. Plaintiff will amend this Complaint to reflect such information when it becomes known to Plaintiff.

## JURISDICTION AND VENUE

8. Gold Star brings this action pursuant to the Defend Trade Secrets Act ("DTSA") at 18 U.S.C. § 1836 *et seq.* This Court possesses subject matter jurisdiction over Gold Star's claim as it arises under the laws of the United States within the meaning of 28 U.S.C. § 1331.

9. This Court possesses supplemental jurisdiction over Gold Star's remaining claims pursuant to 28 U.S.C. § 1367.

10. Venue is proper pursuant to 28 U.S.C. § 1391(b) as Dunlap resides in and performed services for Gold Star in the District and Division.

11. Venue is proper pursuant to 28 U.S.C. § 1391(b) as Davis resides in and performed services for Gold Star in the District and Division.

12. Venue is proper pursuant to 28 U.S.C. § 1391(b) as Mitchell resides in and performed services for Gold Star in the District and Division. Further, many of the other events giving rise to the claims asserted herein occurred in the District and Division.

13. Venue is further proper pursuant to 28 U.S.C. § 1391(b) as Dunlap and Davis agreed in their independent contractor agreements with Gold Star that "[a]ny lawsuits pertaining to this Agreement, or to the services provided, shall be brought in the federal or state courts of the State of Ohio. [Dunlap/Davis] consents to the exercise of personal jurisdiction over it by such courts." *See* Exhibit A (Dunlap's September 16, 2014 Independent Contractor Agreement) at Section 16; Exhibit B (Davis's November 11, 2014 Independent Contractor Agreement) at Section 16.

14. Venue is further proper pursuant to 28 U.S.C. § 1391(b) as LifeEnergy, JDC 1, and JDC 2 have continuous and systematic contacts with the District and Division.

**FACTUAL ALLEGATIONS**

15. Gold Star is in the business of electric and natural gas procurement and sales. Gold Star services both residential and commercial clients in various states. Gold Star relies on "Distributors," or salespeople, to create business relationships and service customers.

16. Gold Star enters into contractual agreements with customers that typically span between twelve to thirty-six months. Distributors, such as Dunlap, Davis, and Mitchell are compensated at regular intervals and receive commission up front based upon annual expected customer usage.

17. On September 16, 2014, Dunlap executed an Independent Contractor Agreement with Gold Star to serve as a "Distributor." A true and correct copy of Dunlap's Agreement, with appropriate redactions, is attached hereto as Exhibit A.

18. On November 11, 2014, Davis executed an Independent Contractor Agreement with Gold Star to serve as a "Distributor." A true and correct copy of Davis's Agreement, with appropriate redactions, is attached hereto as Exhibit B.

19. As a condition of their engagement, Gold Star required Dunlap and Davis to agree to non-competition and non-solicitation provisions.

20. Per the Agreements, Dunlap and Davis are restricted as follows:

The Distributor acknowledges that the Corporation invests substantial time, expense, and effort in obtaining and maintaining its relationship with its customers, agents, representatives, independent contractors, crew managers, and regional managers. Upon the expiration of this Agreement, the Distributor agrees not to call on, solicit, or otherwise contact any "customers" of the Corporation. Furthermore, the Distributor agrees not to solicit any representatives, crew managers, regional managers, independent contractors, or employees to terminate their employment, agency, or other relationship with the Corporation. This shall

be effective immediately and shall continue for a period of thirty-six months following the termination or cancellation of this Agreement.

*See* Exhibit A and Exhibit B at Section 9(A).

21. The Agreements also provided that:

[T]he Distributor shall not solicit any customers for competing services or otherwise compete with the Corporation or its affiliates in any way or manner, directly or indirectly, during the term of this Agreement and for a three-year period following the termination of this Agreement. For purposes of this Agreement, the term "customers" shall be users of the Corporation's services who are under contract with the Corporation's network and all local utilities within the States where the Corporation operates. The Distributor agrees that customers or potential customers shall remain confidential and proprietary to the Corporation. The Distributor shall not reveal or divulge to any third party any confidential or proprietary information or documents which come into the possession of the Distributor as a result of or in connection with, or with respect to this Agreement, or any sales contract, or any other Agreement with the Corporation. The obligation created by this paragraph regarding non-disclosure of confidential or proprietary information shall remain in effect indefinitely and shall survive the expiration or termination of this Agreement.

*See* Exhibit A and Exhibit B at Section 9(B).

22. The Agreements "shall continue in force until terminated in writing by either party" and provide "that the restrictive covenants set forth herein shall be extended for a period of time during which Distributor violated the respective provisions." *See* Exhibit A and Exhibit B at Sections 8(A) and 10(A).

23. The Agreements further provide that, to the extent that Dunlap or Davis violate any of the covenants in the Agreements, Gold Star is entitled to sue, obtain an accounting, including "repayments of all profits, compensation, commission, remuneration, or other benefits" received as a result of any breach, as well as recover damages, and obtain injunctive relief. Further, the Agreements stipulate that Dunlap and Davis "shall be liable for the payment of Court costs, reasonable Attorney's fees, and [enforcement] costs." *See* Exhibit A and Exhibit B at Sections 8(B)-(C) and 10(A).

24.     The Agreements also separately provide for liquidated damages in favor of Gold Star in the amount of $10,000 per breach.  *See* Exhibit A and Exhibit B at Section 8(H).

25.     During his engagement as a Distributor for Gold Star, Dunlap formed JDC 1 with the intent of competing with Gold Star and soliciting Gold Star's independent contractors and customers in violation of his Agreement.

26.     Subsequently, Dunlap solicited Gold Star's independent contractors, including Davis, to discontinue their relationships with Gold Star and to perform services for JDC 1.

27.     Similarly, Mitchell, who worked as a Distributor for Gold Star, formed JDC 2 with the intent of competing with Gold Star and soliciting Gold Star's independent contractors and customers.

28.     LifeEnergy competes with Gold Star in various business areas, including energy services and products.

29.     Dunlap, Davis, and Mitchell, either individually or in connection with JDC 1 or JDC 2, have improperly solicited Gold Star's independent contractors to discontinue their relationships with Gold Star and to perform services for LifeEnergy.

30.     Dunlap, Davis, and Mitchell had extensive access to Gold Star's highly valuable, confidential and proprietary information while providing services for Gold Star.  This information included, but is not limited to, independent contractor information, customer lists, financial information, pricing, vendor data, usage rates, company mark-up, and business strategy and organization.

31.     All of the information in Defendant's possession, as described in Paragraph 30, is confidential and proprietary to Gold Star, is not publicly known, has been generated and

cultivated over many years, and gives Gold Star a substantial competitive advantage over its competitors.

32.     Gold Star has engaged in reasonable efforts to preserve the secrecy of its confidential and proprietary information, including, among other actions, requiring passwords to access computer systems and databases, restricting access to secured shared files, having independent contractors and sales personnel enter into non-competition and non-solicitation agreements, preventing public access to non-public areas of Gold Star offices, and monitoring e-mail usage.

33.     During the time that they performed services for Gold Star and after until the present, Dunlap, Davis, and Mitchell have improperly and regularly contacted and solicited Gold Star's independent contractors and customers.

34.     In the process, Dunlap, Davis, and Mitchell took, retained, and used Gold Star's confidential and proprietary information to benefit themselves, JDC 1, JDC 2, LifeEnergy and others and to gain an unfair advantage.

35.     Further, Dunlap, Davis, and Mitchell have maintained and used Gold Star's confidential, proprietary and trade secret information to unlawfully compete with Gold Star, improperly solicited Gold Star's independent contractors and customers on behalf of themselves, JDC 1, JDC 2, and LifeEnergy, and tortiously interfered with Gold Star's business and customer relationships through intentional misrepresentations and use of Gold Star's misappropriated information.  Unless enjoined, Defendants will continue to act tortiously, and continue to irreparably harm Gold Star.

36.     Gold Star notified Dunlap and Davis of their contractual restrictions, but Dunlap and Davis continue to violate their contractual restrictions.

37.     Likewise, Gold Star notified all Defendants of Dunlap's and Davis's contractual obligations to Gold Star and that Defendants were interfering with Gold Star's business and contractual relationships.  Despite such knowledge, Defendants continue to solicit and retain Gold Star's independent contractors and accept business from Gold Star's customers while engaging in intentional misrepresentations and using Gold Star's misappropriated confidential, proprietary and trade secret information.  Unless enjoined, Defendants will continue their unlawful conduct and continue to cause irreparable harm to Gold Star.

## COUNT I: BREACH OF CONTRACT
### (Against Dunlap and Davis)

38.     Gold Star incorporates herein by reference all allegations set forth in Paragraphs 1 through 37 as if fully rewritten herein.

39.     On September 16, 2014, Dunlap executed an Independent Contractor Agreement with Gold Star to serve as a "Distributor" and sell energy for Gold Star.  *See* Exhibit A.

40.     On November 11, 2014, Davis executed an Independent Contractor Agreement with Gold Star to serve as a "Distributor" and sell energy for Gold Star.  *See* Exhibit B.

41.     In the Agreements, Dunlap and Davis agreed "not to solicit any representatives, crew managers, regional managers, independent contractors, or employees to terminate their employment, agency, or other relationship" with Gold Star. *See* Exhibit A and Exhibit B at Section 9(A).

42.     Dunlap and Davis further agreed not to engage in competitive activity while providing services for Gold Star, agreed to abide by the restrictive covenants for a period of three (3) years after the termination of the agreement, and to keep Gold Star's confidential and proprietary information secret.

43.     Dunlap and Davis breached their Agreements by, among other actions, soliciting Gold Star's independent contractors, competing with Gold Star, either individually or on behalf of JDC 1 or LifeEnergy, taking, retaining, and using Gold  Star's confidential and proprietary information to solicit Gold Star's independent contractors and customers, making material misrepresentations to Gold Star's independent contractors, customers and others, and using Gold Star's confidential and proprietary information to aid JDC 1 and LifeEnergy unfairly in the marketplace.

44.     Dunlap and Davis have also breached their Agreements by failing to provide an accounting, including "repayment of all profits, compensation, commission, remuneration, or other benefits" received as a result of any breach of any covenant contained in the Agreements.

45.     Gold Star has performed all of its obligations under the Agreements and all conditions precedent to the enforcement of these Agreements have been satisfied, waived, or abandoned.

46.     As a direct and proximate result of Dunlap's and Davis's multiple and ongoing breaches of the Agreements, Gold Star has suffered and continues to suffer the immediate loss of its competitive position, the loss of its trade secrets and other proprietary information, the loss of business good will, the loss of sales, and the loss of investment in time and energy in training and retaining its independent contractors and generating its confidential and proprietary information. Gold Star has no adequate remedy at law for these losses as no amount of money can compensate Gold Star for these losses.

47.     Gold Star is entitled to a temporary restraining order and preliminary and permanent injunctive relief, enjoining and restraining Dunlap and Davis and any other person or entity, including Mitchell, JDC 1, JDC 2, and LifeEnergy, acting in aid or concert, or in

participation with them as follows: (a) requiring Dunlap and Davis and any other person or entity, acting in aid or concert, or in participation with them, to sever the relationship with any of Gold Star's independent contractors or customers who were contacted, solicited, and/or obtained as a result of Dunlap's or Davis's contractual violations; (b) prohibiting Dunlap and Davis and any other person or entity, acting in aid or concert, or in participation with them, from soliciting or encouraging any of Gold Star's independent contractors, customers, and/or vendors to terminate their relationship with Gold Star; (c) prohibiting Defendants and any other person or entity acting in aid or concert, or in participation with them, from employing and/or contracting with any of Gold Star's independent contractors and/or vendors; (d) prohibiting Defendants and any other person or entity acting in aid or concert, or in participation with them from, otherwise using or disclosing any of Gold Star's trade secret or confidential information; (e) prohibiting Dunlap and Davis from engaging in any other conduct that would otherwise violate their Agreements; (f) prohibiting Defendants and any other person or entity acting in aid or concert, or in participation with them, from interfering with Gold Star's business relationships and/or contracts; and (g) requiring Defendants to immediately return all of Gold Star's property and information.

48.     As a direct and proximate result of Dunlap's and Davis's actions, Gold Star has been damaged in a monetary amount to be proven at trial.

## COUNT II: TORTIOUS INTERFERENCE
## WITH CONTRACT AND BUSINESS RELATIONSHIPS
### (Against All Defendants)

49.     Gold Star incorporates herein by reference all allegations set forth in Paragraphs 1 through 48 as if fully rewritten herein.

50.     Defendants were and are aware of Gold Star's relationships with Dunlap, Davis, and Mitchell, and Gold Star's contractual and business relationships with its independent

contractors, and without justification or privilege, wrongfully interfered with those contractual and business relationships by soliciting Gold Star's independent contractors and using Gold Star's confidential and proprietary information for purposes of unlawfully competing against Gold Star.

51.     Defendants were and are aware of Gold Star's relationship with various clients, and without justification or privilege, wrongfully interfered with those contractual and business relationships by using Gold Star's confidential and proprietary information for purposes of unlawfully competing against Gold Star.

52.     Defendants, without justification or privilege, wrongfully interfered with Gold Star's contracts and/or relationships with its independent contractors and customers by using Gold Star's protected confidential and proprietary information, which Defendants unlawfully received, in competitive activity with Gold Star.

53.     Defendants, without justification or privilege, wrongfully interfered with Gold Star's existing contracts and relationships with its independent contractors and customers to obtain their breach through fraud and/or misrepresentation.

54.     Defendants maliciously, willfully and intentionally interfered with Gold Star's business and contractual relationships.

55.     Gold Star has suffered and will continue to suffer irreparable harm and other damage as a result of Defendants' actions.

56.     Gold Star is entitled to a temporary restraining order and preliminary and permanent injunctive relief, enjoining and restraining Defendants and any other person or entity acting in aid or concert, or in participation with them, as follows:  (a) requiring Defendants and any other person or entity, acting in aid or concert, or in participation with them, to sever the

relationship with any of Gold Star's independent contractors or customers who were contacted, solicited, and/or obtained as a result of Defendant's tortious actions; (b) prohibiting Defendants and any other person or entity, acting in aid or concert, or in participation with them, from soliciting or encouraging any of Gold Star's independent contractors, customers, and/or vendors to terminate their relationship with Gold Star; (c) prohibiting Defendants and any other person or entity acting in aid or concert, or in participation with them, from employing and/or contracting with any of Gold Star's independent contractors and/or vendors; (d) prohibiting Defendants and any other person or entity acting in aid or concert, or in participation with them, from otherwise using or disclosing any of Gold Star's trade secret or confidential information; (e) prohibiting Defendants and any other person or entity acting in aid or concert, or in participation with them, from interfering with Gold Star's business relationships and/or contracts; and (f) requiring Defendants to immediately return all of Gold Star's property and information.

57.     As a direct and proximate result of Defendants' actions, Gold Star has been damaged in a monetary amount to be proven at trial.

### COUNT III: MISAPPROPRIATION OF TRADE SECRETS
### UNDER THE DEFEND TRADE SECRETS ACT
**(Against All Defendants)**

58.     Gold Star incorporates herein by reference all allegations set forth in Paragraphs 1 through 57 as if fully rewritten herein.

59.     The confidential and proprietary information to which Dunlap, Davis, and Mitchell were exposed and had access, as described in this Complaint, constitute trade secrets within the meaning of 18 U.S.C. §1839(3).

60.     Gold Star took reasonable steps to protect its confidential, proprietary and trade secret information.

61. During and after the time that Dunlap, Mitchell, and Davis provided services to Gold Star, they, without justification or privilege to do so, have misappropriated Gold Star's trade secrets such as, independent contractor information, customer lists, pricing, vendor data, usage rates, company mark-up, customer contract information, and business strategy and organization used in, or intended for use in, interstate or foreign commerce, by taking, retaining, and using Gold Star's confidential, proprietary, and trade secret information to further their own business interests, and the interests of JDC 1, JDC 2, and LifeEnergy, and to directly compete with Gold Star.

62. Defendants used Gold Star's confidential, proprietary and trade secret information in their operations, pricing, contractors, solicitation of business, and solicitation of Gold Star's independent contractors and customers to unfairly compete with Gold Star.

63. Defendants have failed to return Gold Star's confidential, proprietary, and trade secret information in their possession.

64. As a direct and proximate result of this trade secret misappropriation, Gold Star has lost its competitive position, lost its goodwill, lost customers and sales, and lost its investment in time and energy in generating its confidential information.

65. Gold Star faces immediate and irreparable injury, loss, or damage as a result of the misappropriation of its confidential and proprietary trade secrets.

66. Gold Star is entitled to a temporary restraining order and preliminary and permanent injunctive relief, enjoining and restraining Defendants and any other person or entity acting in aid or concert, or in participation with them as follows: (a) requiring Defendants and any other person or entity acting in aid or concert, or in participation with them, to sever the relationship with any of Gold Star's independent contractors or customers who were contacted,

solicited, and/or obtained as a result of Defendant's illegal actions; (b) prohibiting Defendants and any other person or entity acting in aid or concert, or in participation with them, from soliciting or encouraging any of Gold Star's independent contractors, customers, and/or vendors to terminate their relationship with Gold Star; (c) prohibiting Defendants and any other person or entity acting in aid or concert, or in participation with them, from employing and/or contracting with any of Gold Star's independent contractors and/or vendors; (d) prohibiting all Defendants and any other person or entity acting in aid or concert, or in participation with them, from otherwise using or disclosing any of Gold Star's trade secret or confidential information; (e) prohibiting Defendants and any other person or entity acting in aid or concert, or in participation with them from interfering with Gold Star's business and/or contracts; and (f) requiring Defendants to immediately return all of Gold Star's property and information.

67. As a direct and proximate result of Defendants' actions, Gold Star has been damaged in a monetary amount to be proven at trial.

### COUNT IV: MISAPPROPRIATION OF TRADE SECRETS UNDER OHIO LAW
**(Against All Defendants)**

68. Gold Star incorporates herein by reference all allegations set forth in Paragraphs 1 through 67 as if fully rewritten herein.

69. The confidential and proprietary information to which Dunlap, Davis, and Mitchell were exposed and had access, as described in this Complaint, constitute trade secrets within the meaning of Section 1333.61(D) of the Ohio Revised Code.

70. Defendants misappropriated Gold Star's trade secrets by, among other actions, taking, retaining, and using Gold Star's confidential, proprietary, and trade secret information to further their interests to Gold Star's detriment.

71.     Defendants further misappropriated Gold Star's trade secrets by, among other actions, surreptitiously and without authorization or any legitimate purpose, taking, retaining and using Gold Star's confidential, proprietary, and trade secret information, including information pertaining to Gold Star's independent contractors, customer lists, and pricing.

72.     Defendants have used Gold Star's confidential, proprietary and trade secret information that they unlawfully obtained, directly or indirectly, to unlawfully compete against Gold Star, to contact and solicit Gold Star's independent contractors and customers, and to gain an unfair advantage against Gold Star.

73.     Gold Star has no adequate remedy at law to redress the aforementioned misappropriations of its trade secrets.

74.     As a direct and proximate result of Defendants' misappropriation of Gold Star's trade secrets, Gold Star faces the immediate and irreparable loss of its confidential information, the loss of its competitive position, the loss of business goodwill, the loss of sales, and the loss of its investment in time and energy in generating its confidential information. No amount of money could compensate Gold Star for these losses.

75.     Gold Star is entitled to a temporary restraining order and preliminary and permanent injunctive relief, enjoining and restraining Defendants and any other person or entity acting in aid or concert, or in participation with them as follows: (a) requiring Defendants and any other person or entity acting in aid or concert, or in participation with them, to sever the relationship with any of Gold Star's independent contractors or customers who were contacted, solicited, and/or obtained as a result of Defendant's illegal actions; (b) prohibiting Defendants and any other person or entity acting in aid or concert, or in participation with them, from soliciting or encouraging any of Gold Star's independent contractors, customers, and/or vendors

to terminate their relationship with Gold Star; (c) prohibiting Defendants and any other person or entity acting in aid or concert, or in participation with them, from employing and/or contracting with any of Gold Star's independent contractors and/or vendors; (d) prohibiting Defendants and any other person or entity acting in aid or concert, or in participation with them, from otherwise using or disclosing any of Gold Star's trade secret or confidential information; (e) prohibiting Defendants and any other person or entity acting in aid or concert, or in participation with them from interfering with Gold Star's business relationships and/or contracts; and (g) requiring Defendants to immediately return all of Gold Star's property and information.

76.     As a direct and proximate result of Defendants' actions, Gold Star has been damaged in a monetary amount to be proven at trial.

## COUNT V: PUNITIVE DAMAGES

77.     Gold Star incorporates herein by reference all allegations set forth in Paragraphs 1 through 76 as if fully rewritten herein.

78.     Defendants have acted with actual malice and committed intentional, reckless, wanton, willful, and/or gross acts that caused injury to Gold Star and its property.

79.     Dunlap and Davis signed binding non-competition, non-solicitation, and confidentiality agreements.

80.     Notwithstanding the Agreements and warnings about their obligations, Dunlap and Davis have and continue to willfully violate the Agreements.

81.     All Defendants have engaged in unlawful business practices and have interfered with Gold Star's contractual and business relationships.

82.     Through correspondence from Gold Star in 2018, all Defendants were notified that their conduct is unlawful and/or tortious.

83. Despite this notification, Defendants continue to knowingly, unlawfully, and/or tortiously harm Gold Star through material and intentional misrepresentations to Gold Star's independent contractors, customers, and others.

84. Defendants, jointly and severally, acted and otherwise conducted themselves as alleged herein maliciously, fraudulently, oppressively, with malice, and/or with a conscious disregard for the rights of Gold Star.

85. Gold Star is entitled to the maximum award of punitive damages permitted by law.

## REQUEST FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

86. Federal Civil Rule 65 allows this Honorable Court to issue temporary and preliminary injunctive relief under the circumstances verified in this Complaint.

87. In this case, Gold Star submits the specific facts referenced in this Complaint that justify injunctive relief.

88. Defendants have already used Gold Star's information in direct competition with Gold Star. This has included using Gold Star's confidential and proprietary information to solicit independent contractors of Gold Star, to compete unfairly, and to contact and solicit Gold Star customers. Further use of Gold Star's confidential and proprietary information will jeopardize Gold Star's ability to fairly compete in the marketplace and give Defendants an unfair and unlawful advantage.

89. For these reasons and those more fully described in this Complaint, Gold Star seeks a temporary restraining order and preliminary injunction to prevent this immediate and irreparable harm.

## **DAMAGES**

WHEREFORE, Gold Star respectfully requests that this Court enter judgment in its favor and against Defendants on the Complaint as follows:

1.      That this Court temporarily, preliminarily and permanently enjoin and restrain Defendants and any other person or entity acting in aid or concert, or in participation with them as follows:

(a) requiring Defendants and any other person or entity acting in aid or concert, or in participation with them, to sever the relationship with any of Gold Star's independent contractors or customers who were contacted, solicited, and/or obtained as a result of Dunlap's or Davis's contractual violations;

(b) prohibiting Defendants and any other person or entity acting in aid or concert, or in participation with them, from soliciting or encouraging any of Gold Star's independent contractors, customers, and/or vendors to terminate their relationship with Gold Star;

(c) prohibiting Defendants and any other person or entity acting in aid or concert, or in participation with them, from employing and/or contracting with any of Gold Star's independent contractors and/or vendors;

(d) prohibiting Defendants and any other person or entity acting in aid or concert, or in participation with them, from otherwise using or disclosing any of Gold Star's trade secret or confidential information;

(e) prohibiting Dunlap and Davis from engaging in any other conduct that would otherwise violate their Agreements with Gold Star; and

(f) prohibiting Defendants and any other person or entity acting in aid or concert, or in participation with them, from interfering with Gold Star's business and/or contractual relationships.

2.      That this Court require Defendants and any other person or entity acting in aid or concert, or in participation with them, to immediately return all of Gold Star's property and information, keeping no copy;

3.      That this Court require Dunlap and Davis to provide an accounting of all profits, compensation, commission, remuneration, and other benefits they have obtained through the activities described herein;

4.      That Gold Star be awarded compensatory and punitive damages in an amount to be proven at trial;

5.      That Gold Star be awarded liquidated damages in an amount of $10,000.00 for each of Dunlap's or Davis's discrete violation of their Agreements with Gold Star;

6.      That this Court require Dunlap, Davis, and Mitchell to disgorge any compensation received from Gold Star during the time in which they were either in breach of their Agreements with Gold Star and/or engaged in the tortious and illegal conduct described herein;

7.      That Gold Star be awarded its reasonable attorneys' fees and costs; and

8.      Such other relief in Gold Star's favor that the Court deems just, and required under the circumstances of this case.

Respectfully submitted,

/s/Stephen S. Zashin_____
Stephen S. Zashin (Ohio Bar No. 0064557)
ssz@zrlaw.com
Drew C. Piersall (Ohio Bar No. 0078085)
dcp@zrlaw.com
David P. Frantz (Ohio Bar No. 0091352)
dpf@zrlaw.com
ZASHIN & RICH CO., L.P.A.
950 Main Ave., 4th Floor
Cleveland, Ohio 44113
Tel.: (216) 696-4441
Fax: (216) 696-1618

*Attorneys for Plaintiff Gold Star Energy LLC*

## JURY DEMAND ENDORSEMENT

Plaintiff demands a trial by jury on all claims so triable.

/s/Stephen S. Zashin_____
Stephen S. Zashin (Ohio Bar No. 0064557)
ssz@zrlaw.com
Drew C. Piersall (Ohio Bar No. 0078085)
dcp@zrlaw.com
David P. Frantz (Ohio Bar No. 0091352)
dpf@zrlaw.com
ZASHIN & RICH CO., L.P.A.
950 Main Ave., 4th Floor
Cleveland, Ohio 44113
Tel.: (216) 696-4441
Fax: (216) 696-1618

*Attorneys for Plaintiff Gold Star Energy LLC*

## VERIFICATION

STATE OF OHIO                 )

                                     )    SS:

COUNTY OF FRANKLIN    )

I swear that the facts recited in the foregoing Verified Complaint for Temporary Restraining Order (Ex Parte), Preliminary Injunction, Permanent Injunction and Other Relief are true to the best of my knowledge.

 

Tom Engle
Vice President of Commercial Sales
Gold Star Energy LLC

 

SWORN TO BEFORE ME and subscribed in my presence this 4th day of May, 2018.

Notary Public
My commission expires on: 12/18/2022

-21-